## EX PARTE Clifton Dewayne HARVIN, Applicant

### NO. WR-72,328-03

Court of Criminal Appeals of Texas.

Filed: September 21, 2016

Clifton Dewayne Harvin, Applicant.

For majority opinion, see 2016 WL 5400892.

## CONCURRING OPINION

ALCALA, J., filed a concurring opinion.

Although this case presents a close call for me, I respectfully concur in this Court's majority opinion that denies relief to Clifton Dewayne Harvin, applicant, who seeks post-conviction habeas relief from his conviction for aggravated sexual assault. Applicant, who had a prior felony conviction, received an extremely favorable plea bargain of deferred adjudication for aggravated sexual assault. The primary evidence on which he relies in this habeas application is the recent recantation of the complainant, but he entered into the agreed plea bargain even after he knew about her former recantation. The existence of the current recantation, therefore, fails to show that applicant would not have likely pleaded to the offense had he known of the complainant's recantation at that time. Applicant's claim of actual innocence similarly fails because the habeas court's determination that the complainant's more recent recantation was not credible is supported by the record. Applicant also complains of the representation he received by his attorneys, but he has failed to show how he was prejudiced by that representation, which resulted in the very favorable plea bargain in this case for deferred adjudication. Furthermore, applicant relies on the favorable polygraph results as other evidence to show his innocence, but even if that evidence is considered probative, the weight of that evidence is less persuasive in light of his earlier conduct during polygraph testing that appeared to be inconsistent with his innocence, and in light of the absence of any expert testimony to discuss the implications of the polygraph testing as it relates to his credibility as a whole.

With specific regard to the polygraph evidence in this case, I note that the majority opinion appears to conclude that applicant's favorable polygraph results were inadmissible and should be disregarded in their entirety. Although I agree with the general proposition under this Court's established precedent that polygraph results are not admissible standing alone, as they were offered here, I disagree that polygraph-testing results may never be consid-

ered in any form in a post-conviction habeas proceeding because, in my view, that evidence might appropriately be introduced to the limited extent that it is part of the underlying foundation for an expert's opinion, and to the limited degree that it might assist the habeas court in assessing the credibility and weight of an expert's testimony in a given case. Because it is my view that polygraph evidence might be admissible for such limited purposes in a post-conviction proceeding, I make several observations related to that point.

As used in sexual-assault cases, the criminal-justice system has a love-hate relationship with polygraph evidence. On the one hand, community supervision for sexual-assault cases generally includes a condition that a defendant take and pass polygraph examinations that inquire about his sexual history, the offense for which he was placed on community supervision, and his compliance with community-supervision conditions. The Texas Administrative Code provides for the use of polygraph tests in the assessment and treatment standards for adult sex offenders. 22 TEX. ADMIN. CODE § 810.64(c)(18) ("polygraph examinations shall be used as a part of a comprehensive treatment program"). The criminal-justice system, therefore, apparently considers polygraph testing sufficiently reliable for the purposes of treating sex offenders.

On the other hand, this Court has held that polygraph results are inadmissible in trial-court proceedings under the Texas Rules of Evidence. Quoting *Leonard v. State*, this Court's majority opinion states, "For more than sixty years, we have not once wavered from the proposition that the results of polygraph examinations are inadmissible over proper objection because the tests are unreliable." *Leonard v. State*, 385 S.W.3d 570, 577 (Tex.Crim.App.2012).

In *Leonard*, this Court held that a defendant's community supervision may not be revoked based solely on the results of polygraph examinations. *Id.* at 583. In discussing whether the results of polygraph testing conducted pursuant to a condition of community supervision could be admitted through an expert's opinion, the *Leonard* Court's holding disallowed that evidence when "the sole basis of [the expert's] opinion was the results of a test that we have held inadmissible *because it is not reliable*." *Id.* at 582. This Court's discussion explained that, given that the failed polygraphs were the "sole basis" for the expert's opinion, this "[t]otal reliance on inadmissible and untrustworthy facts cannot be reasonable." *Id.* (citations and quotations omitted). Similarly, the Code of Criminal Procedure prohibits a trial court from revoking a defendant's community supervision based solely on the uncorroborated results of a polygraph examination. TEX. CODE CRIM. PROC. art. 42.12, §§ 5(b), 21(c) (disallowing an adjudication of guilt or revocation of community supervision if "the only evidence supporting the alleged violation of a condition of community supervision is the uncorroborated results of a polygraph examination").

In view of these statutes and this Court's *Leonard* decision, it is clear that polygraph evidence standing alone is inadmissible under the rules of evidence, but it is also clear that polygraph evidence is considered reliable in the treatment of sex offenders. Even though it is inadmissible on its own, in my view, given its apparent reliability as a tool for sex-offender treatment, such evidence might be properly considered as part of an expert's more global opinion in a particular case in the post-conviction habeas context before a judge, particularly with respect to testimony regarding characteristics of sex offenders, so long as it is not the sole basis for the expert's opinion. *See Leonard*, 385 S.W.3d at 577.

In this case, applicant introduced the results of three polygraph examinations for the purpose of showing that he was innocent of the offense for which he was convicted. As *Leonard* pointed out, that evidence is unreliable for that purpose because polygraph evidence may not be admitted as standalone evidence on a disputed matter, nor may it serve as the sole basis for an expert's opinion on a disputed matter. *Id.* at 581–83. Furthermore, in this case, as this Court's majority opinion observes, applicant's conduct during polygraph testing that occurred at a different time than the three tests that he has supplied suggested that he was willing only to selectively answer certain questions and may have admitted to inappropriate conduct with an underage child. Given that evidence, his favorable polygraph results would appear to be even less reliable.

With these comments, I concur in the judgment of the Court.

## DISSENTING OPINION

MEYERS, J., filed a dissenting opinion.

Depending on who the defendant may be, you can pretty much count on this majority to give you a 40-page opinion that either prevents the wheels of justice from legitimately turning, or as in this particular case prevents the Applicant from having an error-free day in court. If you are the former governor of the State of Texas or the former Republican Texas Representative who was the house majority leader in the United States Congress, we have seen that this majority will not hesitate to invent new remedies to prevent affirming a jury conviction or to prevent prosecution altogether. *See Ex parte Perry*, 483 S.W.3d 884 (Tex.Crim.App.2016); *Delay v. State*, 465 S.W.3d 232 (Tex.Crim.App.2014). In *Delay* the majority realized that the only avenue to grant relief to the former congressman was to manufacture an additional culpable mental state in order to get a conviction for illegal corporate contributions. In Governor Rick Perry's case, the majority came to his rescue by employing the fallacious argument of separation of powers, which it did not even correctly employ.[1] But the Applicant here does not bring the same pedigree that the former governor and congressman bring to their appeals, so the mandatory 40-page opinion is now being used to prevent the Applicant from the new trial to which he is so clearly entitled. In my *Perry* dissent, I indicated that the tragedy in that case was not just in granting relief to Perry, but in preventing legitimate appeals by other defendants who do not share his political power or charm.[2]

1. By saying that because the prosecutor is part of the judicial branch the State prosecuting the former governor was a separation of powers issue, the majority missed the point that the penal code sections at issue were passed by the legislature. So, if there was a separation of powers problem it would have been that the legislature was attempting to infringe on the executive branch by enacting a statute that allowed prosecution for criminal conduct of the governor. *See Ex parte Lo*, 424 S.W.3d 10 (Tex.Crim.App.2014).

2. In *Perry*, it was clear that the majority stretched the bounds of legitimacy in order to bring forth a constitutional argument which did not exist in fact or law. It is worth noting that Perry was represented by the same firm who brought forth a subsequent writ in the Beazley capital murder case, saying that Napoleon Beazley should be exempt from the death penalty because he was a juvenile at the time of the crime. Unfortunately, Presiding Judge Keller and Judges Keasler and Hervey could not see the constitutional basis of Beazley's writ and chose to deny it. He was subsequently executed before the Supreme Court came out with a case saying that it was unconstitutional to execute juveniles. *See Roper v. Simmons*, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005). Lucky for the Governor that he did not fall prey to the same constitu-

The attached Exhibit A, an opinion I originally brought to this Court, shows that the Applicant here had almost no representation and that numerous errors by the attorneys and judges in this case plagued the entire process. It is sad that the majority does not give Applicant the relief he deserves, but I guess it is not the politically expedient thing to do. Therefore, I dissent.

## EXHIBIT A

## IN THE COURT OF CRIMINAL APPEALS

## OF TEXAS

## NO. WR–72,328–03

## EX PARTE CLIFTON DEWAYNE HARVIN, Applicant

## ON APPLICATION FOR A WRIT OF HABEAS CORPUS

## FROM MONTAGUE COUNTY

MEYERS, J., delivered the opinion of the court.

## OPINION

Applicant was charged with aggravated sexual assault of a child. The State offered ten years' deferred-adjudication community supervision in exchange for a guilty plea. Applicant adamantly refused to plead guilty, stating that he had not committed the crime and that he had an audiotape of the victim, his six-year-old daughter, recanting the allegation. Applicant claims that his attorney refused to take the case to trial and insisted that he accept the State's plea offer. According to Applicant, he agreed to plead nolo contendere because he was not informed that a nolo contendere plea had the same legal effect as a plea of guilty and he was told that he could prove his innocence while he was on deferred adjudication. Pursuant to this plea bargain, Applicant pled nolo contendere to aggravated sexual assault of a child, and the trial court placed him on ten years' deferred-adjudication community supervision.

Over the next two years, Applicant filed motions to terminate deferred adjudication, claiming actual innocence. The trial court held multiple hearings on the motions and admitted three polygraph examinations that Applicant had passed. The State did not object to the admission of the polygraphs or to Applicant's early release from deferred-adjudication community supervision. The trial court never ruled on Applicant's motions to terminate deferred adjudication and at no time did the trial judge, the prosecutor, or Applicant's attorney, Walsh, inform him that he was not eligible for early termination.[3]

Seven years after Applicant was placed on deferred adjudication, the State filed a motion to adjudicate his guilt based on violations of the terms of community supervision. The trial court granted the State's motion, revoked Applicant's community supervision, and found him guilty of aggravated sexual assault as charged in the

tional analysis that the majority used in *Beazley*.

3. In 1997 and 1998, when Applicant filed his motions to terminate deferred adjudication, Code of Criminal Procedure Article 42.12 Section 5(c) allowed a defendant given deferred adjudication for certain sexual offenses against children to be eligible for early discharge after serving two-thirds of the community-supervision term. Thus, having served only two years of his ten-year term, Applicant would not have been eligible for early discharge at the time he filed his motions to terminate. The legislature amended Article 42.12 Section 5(c) in 1999, and early discharge is now prohibited for anyone who is required to register as a sex offender.

indictment. Applicant was sentenced to sixty years' imprisonment.

Applicant appealed, claiming that the trial court failed to respond to his motions to terminate deferred adjudication and erred in denying his motion for mistrial based on new evidence. The court of appeals referred to the case as an "appalling scenario," but overruled Applicant's issues, holding that a defendant may not appeal a trial court's decision to adjudicate and thus, an appeal after adjudication was not the proper vehicle for his complaints. *Harvin v. State*, No.2–04–294–CR, 2005 WL 2402731, 2005 Tex. App. LEXIS 8133 (Tex.App.–Fort Worth Sept. 29, 2005).

Applicant filed a post-conviction application for writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure, raising issues related to ineffective assistance of trial and appellate counsel. We remanded to the trial court for findings of fact and conclusions of law. *Ex Parte Harvin*, No. WR–72,328–01, 2009 WL 3646914, 2009 Tex. Crim. App. Unpub. LEXIS 736 (Tex.Crim.App. Nov. 4, 2009). On remand, the trial court considered the affidavits of trial counsel, appellate counsel, and the prosecutor, as well as the record and signed papers from the plea hearing. The court found that both trial and appellate counsel had rendered effective assistance. We determined that the record was not adequate to resolve Applicant's claims and ordered the trial court to hold a live evidentiary hearing and to make further findings of fact and conclusions of law relevant to the performance of Applicant's trial and appellate counsel. *Ex Parte Harvin*, No. WR–72,328–01, 2010 WL 2619626, 2010 Tex. Crim. App. Unpub. LEXIS 404 (Tex.Crim.App. June 30, 2010). The trial court found that Applicant was denied his right to file a *pro se* petition for discretionary review. We again remanded the case to the trial court to make further findings of fact and conclusions of law as to whether the complainant's recantations were credible; whether the recantations were newly discovered evidence; whether Applicant had established that he was actually innocent; and whether the transcript of the grand-jury testimony was disclosed to Applicant before he pled nolo contendere. *Ex Parte Harvin*, No. WR–72,328–01, 2011 WL 2368960, 2011 Tex. Crim. Unpub. LEXIS 408 (Tex.Crim.App. June 8, 2011). After this remand, we determined that Applicant was entitled to file an out-of-time petition for discretionary review. We dismissed Applicant's other grounds without prejudice. *Ex Parte Harvin*, No. AP–76,914, 2013 WL 2112366, 2013 Tex. Crim App. Unpub. LEXIS 581 (Tex.Crim.App. May 15, 2013). Applicant filed the out-of-time petition for discretionary review, which we refused because the claims he raised could be resolved only in a post-conviction habeas proceeding. *Harvin v. State*, No. PD–0634–13, 2013 WL 5872844, 2013 Tex. Crim. App. Unpub. LEXIS 1202 (Tex.Crim.App. Oct. 30, 2013).

Applicant filed this application for writ of habeas corpus raising seventeen grounds for review. His grounds include actual innocence and other due-process violations, ineffective assistance of appellate counsel, ineffective assistance of trial counsel resulting in an involuntary plea of nolo contendere, and ineffective assistance of trial counsel for failure to recuse the prosecutor and trial judge, failure to file motions for discovery, and failure to present a defense at the punishment hearing. We hold that Applicant received ineffective assistance of counsel and was prejudiced by his counsel's deficient performance. Relief is granted.

## PARTIES

Due to the rather complicated timeline of this case, an explanation of the parties may be helpful. Applicant's first attorney was Jack McGaughey, whom he hired to represent him at a polygraph exam that was arranged by the sheriff's office several months after Applicant was charged with this offense. McGaughey did not appear at the sheriff's office, and the polygraph exam was never conducted. Applicant said McGaughey refunded the money Applicant had paid him to appear at the polygraph exam. McGaughey was later the prosecutor in this case at the revocation and punishment hearings against Applicant. Applicant's second attorney was Pat Morris. Morris had approached Applicant outside the courtroom after Applicant was denied appointed counsel by the trial judge and offered to take his case for $800. Applicant claims that he met with Morris for about an hour outside the courtroom and that was the only time they met or discussed the case before Morris represented Applicant at the plea hearing. Morris was later disbarred for lying to clients, failing to do meaningful work on his client's cases, and failing to refund money to clients whose cases he had failed to work on. Applicant's third attorney was William Walsh, who represented him in his motions for early termination of community supervision, in the adjudication and punishment hearings, and in his direct appeal. Walsh was found to be ineffective for failing to timely notify Applicant that his appeal had been affirmed. Applicant's habeas attorney was Bruce Martin. Finally, there were two judges who heard the case—Judge Towery at the plea and adjudication hearings and Judge Woodlock on habeas.

## FINDINGS OF FACT

As stated above, this case was remanded to the trial court three times for findings of fact. On our first remand, the trial court made the following findings of fact #1:

1. The performance of Applicant's trial counsel was not deficient. Trial counsel investigated all evidence and witnesses. Trial counsel allowed Applicant to decide how to plead in the case after having advised him and visited with him about the witnesses and evidence on many occasions. Among the things that was [sic] discussed was the recantation of the victim. Trial counsel was willing to represent Applicant at a trial and did not tell him he would be sentenced to forty years if he insisted on a trial. Trial counsel and the Court explained to Applicant the effect of a no contest plea. Reading the Reporter's Record of the plea hearing, it becomes very obvious that Applicant was very satisfied with the representation he had received from trial counsel. It is worthy of note that the recantation by the victim, the daughter of Applicant, was on a tape that was presented to the District Attorney by the defense and which tape had the Applicant's voice on it.

2. Appellate counsel timely notified Applicant that his conviction had been affirmed.

We did not believe that the record[1] was adequate to resolve Applicant's claims and ordered the trial court to hold a live evidentiary hearing. We asked the court to determine:

1. What evidence and witnesses, if any, trial counsel investigated.

2. Whether trial counsel, despite knowing that the complainant had recanted, advised Applicant to plead no contest or guilty and, if so, why trial counsel provided such advice.

3. Whether trial counsel was willing to represent Applicant at a trial.

4. Whether trial counsel advised Applicant that he would be sentenced to forty years if he insisted on a trial.

5. Whether trial counsel explained to Applicant that a no contest plea and a guilty plea have the same legal effect in a criminal proceeding.

6. Whether appellate counsel timely notified Applicant that his conviction had been affirmed on direct appeal.

7. Whether the transcript of the grand jury testimony was disclosed to Applicant before he pleaded no contest.

The trial court held a hearing and responded with findings of fact and conclusions of law #2:

Findings of Fact

1. Trial counsel for applicant was retained by applicant.

2. Trial counsel for applicant does not remember this case.

3. Trial counsel for applicant testified as to his habit and custom when representing clients.

4. Trial counsel always reviewed the State's file pursuant to the open file policy.

5. Trial counsel met with applicant and discussed the case.

6. Applicant had a prior felony conviction in Oklahoma.

7. Trial counsel arranged a plea bargain for deferred adjudication.

8. Applicant was aware of the alleged recantation by the complainant.

9. Applicant was admonished of the effect of his plea by trial counsel.

10. Applicant was admonished of the effect of his plea by the trial judge.

11. Appellate counsel, William Walsh, failed to timely notify applicant that applicant's appeal had been affirmed on direct appeal.

12. Applicant never established an attorney-client relationship with Jack McGaughey.

Conclusions of Law

1. Trial counsel provided applicant with effective assistance.

2. Applicant received due process of law at the trial of his case.

3. Appellate counsel deprived applicant of applicant's right to a hearing after applicant's direct appeal was concluded.

4. Applicant's plea of nolo contendere was knowingly, intelligently and voluntarily made.

We determined that Applicant had alleged facts that, if true, might entitle him to relief but we believed the record was not adequate to resolve his claims. We remanded a third time, asking the trial court to determine whether the recantations were credible and were newly discovered evidence, and whether Applicant established that he was actually innocent. We again asked the court whether the transcript of the grand-jury testimony was disclosed to Applicant before his plea. The trial court responded with its findings of fact #3:

1. Considering the testimony and the affidavit, the fact that the complainant recanted before the Applicant's pastor, prior to the plea, the trial court does not find the recantations to be of such a nature as to be credible.

2. Complainant recanted in front of Applicant's pastor prior to the plea. The only difference the trial court is able to discern is that at her testimony on December 19, 2011, she blamed everything on the Child Protective Services. Since the recantation was first made in front of Applicant's pastor, in Applicant's presence, the recantation was certainly in Applicant's knowledge when he made his plea.

3. The trial court does not find that the Applicant has established that he is actually innocent.

4. The trial court does not find that there was any recorded grand jury transcript of

the testimony, based upon the testimony of the witness Jack McGaughey.

5. A. Applicant's allegation that the State failed to disclose exculpatory evidence is totally without merit. The evidence shows that the Applicant made the State aware of the complainant's recantation in front of Applicant's pastor.

B. Had there been any transcribed grand jury testimony, it would have been available to use to cross-exam[ine] the witness who gave it, if the witness had testified at a trial.

This Court is the ultimate factfinder in habeas corpus proceedings. In most circumstances, we will defer to and accept a trial judge's findings of fact and conclusions of law when they are supported by the record. When our independent review of the record reveals that the trial judge's findings and conclusions are not supported by the record, we may exercise our authority to make contrary or alternative findings and conclusions. *Ex Parte Reed,* 271 S.W.3d 698 (Tex.Crim.App.2008).

Here, our independent review reveals the following: In the findings of fact #1, the trial court found that trial counsel investigated all evidence and witnesses, that trial counsel allowed Applicant to decide how to plead in the case after having advised him and visited with him about the witnesses and evidence on many occasions, and that among the things discussed was the recantation of the victim. Neither the affidavit nor testimony of attorney Morris support this finding. In his affidavit, Morris wrote of his "habit and custom" when representing clients, but stated that he remembered nothing about Applicant or his case. We exercise caution when reviewing findings based solely on "habit and custom," and the trial court should have done so as well. The trial court also found that trial counsel and the court explained to Applicant the effect of a no contest plea, but the reporter's record does not support this finding. Applicant was never told on the record that his nolo contendere plea had the same legal effect as a guilty plea. Finally, the trial court's finding that appellate counsel timely notified Applicant that his conviction had been affirmed is not supported by the record, and in fact on second remand, the trial court determined that attorney Walsh failed to timely notify Applicant that his appeal had been affirmed on direct appeal.

On second remand, the trial court's findings of fact numbers 1-8 and 12 do not answer any of the questions we asked the trial court to consider. Finding 12, that Applicant never established an attorney-client relationship with Jack McGaughey, is contradicted by the record. The Sheriff's report from 1995 states that Jack McGaughey was Applicant's attorney and that he had agreed to allow his client to take the Sheriff's polygraph exam. The trial court made no findings at all related to our questions 1-4 and 7.

Finally, in the trial court's findings of fact #3, the trial court considered only the audio-taped recantation that Applicant's daughter made at church shortly after the allegation, which Applicant was obviously aware of prior to his plea. Because we are in the same position as the trial court to review the audio tape, we need not defer to the trial court's findings that this recantation is not credible. Our independent review of the audio tape reveals nothing that calls into question the credibility of the recantation. The trial court has never answered the question of whether there were other recantations, which Applicant claims were in the CPS report obtained by the complainant many years after Applicant's plea, despite the fact that the complainant testified about this issue at the habeas hearing and stated that she told CPS that

her father did not touch her but that her brother did. Applicant claims that the CPS reports show that the complainant recanted her allegations against Applicant to CPS prior to his guilty plea. The trial court never considered whether this CPS report was disclosed to Applicant or his attorney. The trial court did, however, finally acknowledge that there was never a recorded transcript of the grand-jury testimony.

Although we gave the trial court three opportunities to make the requested findings, it either failed to do so or made findings that are not entirely reliable. When viewed as a whole, the record does not support the trial court's findings.

As we stated in *Reed*, "When our independent review of the record reveals findings and conclusions that are unsupported by the record, we will, understandably, become skeptical as to the reliability of the findings and conclusions as a whole. In such cases, we will proceed cautiously with a view toward exercising our own judgment." 271 S.W.3d at 727. Because the fact findings entered by the trial judge here do not assist us in resolving the disputed issues, we will assume our role as the ultimate fact finder in this case. *Ex Parte Flores*, 387 S.W.3d 626 (Tex.Crim.App. 2012).

## ANALYSIS

In *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), the United States Supreme Court extended the requirement for effective assistance of counsel to the plea-bargaining process. The Court stated that, as in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a defendant claiming ineffective assistance of counsel in the plea-bargain process must first show that counsel's representation fell below an ob-

jective standard of reasonableness. The second requirement focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. To satisfy this "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. The Supreme Court stated in *Strickland* that, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* at 691, 104 S.Ct. 2052.

We applied the *Hill* standard in *Ex Parte Briggs*, 187 S.W.3d 458 (Tex.Crim.App. 2005), and held that there was a reasonable probability that the applicant would not have pled guilty if her attorney had conducted a reasonable investigation and informed her of the significance of the facts of the case. We stated that a reasonably competent attorney must seek to advance his client's best defense in a reasonably competent manner and concluded that the applicant "was entitled to rely upon her counsel 'to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered' based upon an informed investigation of the facts." *Id.* at 469–70 (quoting *Von Moltke v. Gillies*, 332 U.S. 708, 721, 68 S.Ct. 316, 92 L.Ed. 309 (1948)).

Applicant claims that attorney Morris did no investigation related to the fact that Applicant and his wife were involved in a divorce or that the complainant had recently accused her older half-brother of sexually abusing her and had accused the

outcry witness in this case of physically abusing her.[4] He also failed to investigate the complainant's recantations.[5] Applicant claims that, prior to the plea hearing, he tried to get attorney Morris to take the case to trial, but Morris refused and threatened to walk out. Attorney Morris claims to remember nothing about this case or his representation of Applicant, but he said that his normal routine in a case was to read the prosecutor's file, discuss the evidence with his client, discuss the possible punishment range, and to explain the effect of a nolo contendere plea. He also said that he would have been ready and willing to represent Applicant if he had wanted a trial. As stated above, we view testimony based solely on "habit and custom" with skepticism. It appears from the record that attorney Morris did nothing more than arrange for a guilty plea, which Applicant refused until it was modified to a plea of nolo contendere.

While defense counsel is responsible for advising his client and investigating the facts and law related to the case, he is not the only one with a responsibility to ensure that the plea-bargaining process is conducted in a proper manner. Prior to *Moon v. State*, 572 S.W.2d 681 (Tex.Crim.App. 1978), whether the plea was before a jury or before the court after a jury had been waived, the trial court was required to withdraw a defendant's guilty or nolo contendere plea and enter a not guilty plea for the defendant when the evidence raised an issue as to his guilt. This was because a jury had to be impaneled to hear a not guilty plea. We held in *Moon* that, due to changes to the 1965 Code of Criminal Procedure that allowed a defendant to waive a jury trial and enter a plea of not guilty before the court in all except capital cases, there was no longer any valid reason to require the court to withdraw a guilty or nolo contendere plea even when evidence reasonably and fairly raises an issue as to the defendant's innocence. However, it was still the duty of the trial court to consider the evidence submitted and either assess the appropriate punishment or find the defendant not guilty. In his concurring opinion, Judge Phillips suggested that trial judges pursue a more detailed inquiry when evidence that reasonably raises the issue of innocence is presented. "When such evidence is raised, it may indicate a breakdown in communications between attorney and client and State. It might also be an indication that the defendant has not been adequately advised of the law as it relates to the facts of his case. This is a constitutional prerequisite to a voluntary and knowing plea of guilty." *Id.* at 688 (Phillips, J., concurring).

Although a trial judge may accept a guilty or nolo contendere plea even when the defendant claims innocence, the ultimate duty of both the trial judge and the State is to see that justice is served. The United States Supreme Court held in *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), that a trial judge

4. The outcry witness was Applicant's wife's cousin, Risa, whom the children lived with after Applicant and his wife separated. When the complainant recanted, she stated that Risa had told her to say that Applicant had touched her. CPS reports indicate that the complainant had also previously accused Risa's sister, Janice, of abusing her and her younger brother.

5. As discussed in the findings of fact above, Applicant claims that there were additional recantations by his daughter prior to his plea that were not disclosed to him. At the time of his plea, he knew only of the taped recantation that he had obtained with his daughter at church, but he says attorney Morris refused to listen to the tape or question those who witnessed the recantation.

may accept a guilty or nolo contendere plea even without an express admission of guilt by the defendant. However, this holding was based on the fact that in *Alford*, the record before the judge contained strong evidence of actual guilt, "which substantially negated his claim of innocence and which further provided a means by which the judge could test whether the plea was being intelligently entered." *Id.* at 38, 91 S.Ct. 160. Thus, the Supreme Court made it clear that a judge may accept a plea only if it is supported by the evidence and shown to be knowingly, intelligently, and voluntarily entered. The case before us is distinguished from an *Alford* plea in that there was very little evidence to substantiate Applicant's guilt. Rather, there was evidence pointing to his innocence, and the record indicates that Applicant was confused regarding the plea, which calls into question whether it was voluntarily and intelligently entered.

A judge in a plea hearing often has very little information available to assist in the determination of whether to accept a plea, and must rely on the State, defense counsel, and the defendant to accurately present the facts. When a defendant enters a judicial confession and is properly admonished, it is reasonable for the court to assume that counsel investigated the case and advised the defendant of the effect of the plea and that the defendant has made a well-thought-out decision to enter the plea. *See Mitschke v. State*, 129 S.W.3d 130, 136 (Tex.Crim.App.2004) (stating that, "A defendant who pleads guilty after having been properly admonished of his constitutional rights, who has knowingly and voluntarily waived those rights, and who has been admonished as required by our constitutions and art. 26.13, is presumed to have entered a voluntary and knowing plea."). Unfortunately, even when such

reasonable assumptions are made, there can be a breakdown in the process. The applicant in *Ex Parte Tuley*, 109 S.W.3d 388 (Tex.Crim.App.2002), pled guilty and entered a judicial confession. He later claimed actual innocence. In her habeas findings, the trial judge said she had been surprised that the applicant had pled guilty given the lack of evidence against him and she "assumed that there were facts affecting the applicant's decision to plead guilty of which she was unaware." The trial judge recommended that we grant relief based in part on newly discovered evidence that the complainant had recanted her allegations almost immediately after making them. *Id.* at 395–96. The distinguishing factors in this case are that Applicant refused to make a judicial confession, refused to plead guilty, and did not appear to understand the legal effect of the nolo contendere plea.

Applicant contends that he would not have pled nolo contendere had he known that it had the same legal effect as a guilty plea and that attorney Morris, Judge Towery, and the State all knew that he would not have accepted the plea had he known of its legal effect. There is no record of what advice, if any, attorney Morris gave Applicant regarding the legal effect of a nolo contendere plea, but it is clear from the record that the judge and the prosecutor were aware that Applicant adamantly denied guilt and maintained his innocence. Because Applicant would not sign anything indicating that he was guilty, the trial judge went so far as to cross out each reference to the word "guilty" in the plea agreement and hand write the words "nolo contendere" in its place. He also crossed out the entire "sworn judicial confession" section. When he admonished Applicant about the plea, the trial judge did not inform Applicant that the nolo contendere plea had the same legal effect as a guilty

plea; rather he said to Applicant, "[Y]ou understand that based upon your plea and the evidence admitted that the Court will *not* find you *not* guilty?" (emphasis added).

Applicant also claims that his nolo contendere plea was coerced because he was given erroneous advice and that his attorney suborned perjury by telling him to answer "yes" when asked if he had seen the transcript of the grand-jury testimony when in fact there was no transcript of the grand-jury proceedings. At the plea hearing, attorney Morris asked Applicant about their review of the transcripts of the grand-jury testimony. Specifically, the attorney said that the district attorney's office had provided them with the grand-jury testimony and that they had thoroughly gone over all of the grand-jury testimony. Applicant claims that he was instructed by attorney Morris to answer "yes" to each question and was told that the plea deal would not go through if he did not answer "yes" to all of the questions posed to him. There has been some inquiry regarding this reference to the grand-jury testimony because Applicant's appellate and writ attorneys were unable to find it in the district attorney's file. On our remands to the trial court, we specifically requested a finding on whether the transcript of the grand-jury testimony was disclosed to Applicant before he entered his plea. *Ex Parte Harvin*, 2009 WL 3646914 at *1, 2009 Tex Crim. App. Unpub. LEXIS 736 at *3–4; *Ex Parte Harvin*, 2010 Tex. Crim. App Unpub. LEXIS 404 at *3; *Ex Parte Harvin*, 2011 Tex. Crim. App. Unpub. LEXIS 408 at *2–3. It appears from the record that there never was a transcript of the grand-jury testimony in the district attorney's files.[6] Neither the district attorney nor Applicant's attorneys can ever remember seeing a written transcript of the grand-jury testimony. It is unclear why attorney Morris would question Applicant regarding a non-existent grand-jury transcript, and why the prosecutor and judge would not challenge testimony elicited by the defense regarding a document both of them had to have known either did not exist or at least could not have been properly disclosed to Applicant. While this situation differs from the usual cases cited for this proposition, the prosecutor still had a constitutional and ethical duty to correct known false testimony. *See Duggan v. State*, 778 S.W.2d 465, 468–69 (Tex.Crim. App.1989).

Applicant claims that attorney Morris told him that, if he accepted the plea, he could prove his innocence while he was on deferred adjudication. Because attorney Morris purports to remember nothing related to this case, the record is silent as to his advice to Applicant. However, the record is clear that Applicant's appellate attorney, Walsh, did indeed lead him to believe that he could prove his innocence while he was on deferred adjudication and even arranged polygraph examinations for Applicant to prove his innocence. Attorney Walsh said at the habeas hearing that, although he had read Code of Criminal Procedure Article 42.12 and he "knew that it would be a rough road to go down," he still decided to pursue early termination rather than filing a writ of habeas corpus based on ineffective assistance and actual innocence because he thought that due to

---

**6.** This would make sense, as prior to September 1, 1995, there was no requirement that the questioning and testimony of a suspect witness before the grand jury be recorded. *See* Code Crim. Proc. Art. 20.012. Applicant appeared before the July 1995 grand jury. Additionally, if any recording had been made, Applicant would have had to petition the court and show a particularized need for the transcript in order for it to have been disclosed to him. *See* Code Crim. Proc. Art. 20.02(d). There is no record of any such petition.

the polygraph exams Applicant had passed and the compelling facts and circumstances of the case, he might be able to move the court or set up an appeal. As stated above in note 1, although the State did not oppose early termination and the trial court took the motions under advisement, Applicant was not eligible for early termination at that time, and these attempts to prove his innocence were futile. It is unclear why the trial court held multiple hearings on these motions, ordered Applicant to take a third polygraph exam, and took these motions under advisement when Applicant was not eligible for early termination.

Applicant claims that his appellate attorney, Walsh, was ineffective for failing to present any evidence or any witnesses at the revocation or punishment hearings, and for failing to move to recuse Applicant's former attorney McGaughey from representing the State at the hearings. Six months after the original motion to adjudicate was filed, the trial court held a hearing resetting an amended motion to adjudicate. At this hearing, Applicant objected, on the record, to his previous attorney on this same case, McGaughey, representing the State at revocation. The trial court found that Applicant had waived the right to complain about McGaughey's representation of the State because he had not raised the issue at the time of the original motion to adjudicate. In *Ex Parte Spain*, 589 S.W.2d 132, 134 (Tex.Crim.App.1979), we stated that,

When a district attorney prosecutes someone whom he previously represented in the same case, the conflict of interest is obvious and the integrity of the prosecutor's office suffers correspondingly. Moreover, there exists the very real danger that the district attorney would be prosecuting the defendant on the basis of facts acquired by him during the existence of his former professional relationship with the defendant. Use of such confidential knowledge would be a violation of the attorney-client relationship and would be clearly prejudicial to the defendant.

More recently we considered Texas Code of Criminal Procedure Article 2.01 and concluded that, "[I]f a prosecuting attorney has formerly represented the defendant in the 'same' criminal matter as that currently being prosecuted, he is statutorily disqualified. The Legislature has decreed that this conflict of interest is both obvious and actual, and we have so held." *Landers v. State*, 256 S.W.3d 295, 304 (Tex.Crim.App.2008). We can think of no possible trial strategy for failing to immediately move to recuse a prosecutor who previously represented the client in the same case and attorney Walsh claimed that he did not remember raising the issue. There is a reasonable possibility that this obvious conflict of interest was prejudicial to Applicant and adversely affected the outcome of the adjudication and punishment hearings.

In *Ex Parte Welborn*, 785 S.W.2d 391, 396 (Tex.Crim.App.1990), we considered the totality of counsel's representation and stated that, "Although, no one instance in the present case standing alone is sufficient proof of ineffective assistance of counsel, counsel's performance taken as a whole does compel such a holding. Counsel failed to conduct a reasonable investigation of the facts and the law." *See also Ex Parte Imoudu*, 284 S.W.3d 866 (Tex.Crim. App.2009) (holding that the applicant's guilty plea was involuntary because his trial counsel failed to investigate and advise him of the availability of an insanity defense.) Here, the totality of the representation of Applicant by multiple attorneys included, at the very least, a failure to investigate, an involuntary plea, suborna-

tion of perjury, misunderstanding of the law, and a conflict of interest. We conclude that the representation of both trial and appellate counsel fell below an objective standard of reasonableness. Trial counsel did not interview the witnesses who heard the complainant recant her allegation and suborned perjury when questioning Applicant about the grand-jury transcripts. Applicant has shown that, but for trial counsel's deficient performance, he would not have agreed to a plea of nolo contendere and would have insisted on going to trial.

## CONCLUSION

Relief is granted. The judgment in Cause No. 95–08–0076M–CR in the 97th District court of Montague County is set aside and Applicant is remanded to the custody of the sheriff of Montague County to answer the charges as set out in the indictment. A copy of this opinion shall be sent to the Texas Department of Criminal Justice, Correctional Institutions Division.