

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-19-00200-CR
No. 02-19-00201-CR

_____

Ex parte Mohammad Rashid Salim

On Appeal from the 432nd District Court
Tarrant County, Texas
Trial Court Nos. C-432-W011268-1487220-AP, C-432-W011462-1487220-BP, C-432-W011269-1487226-AP, C-432-W011466-1487226-BP

Before Gabriel, Kerr, and Wallach, JJ.
Memorandum Opinion by Justice Wallach

## MEMORANDUM OPINION

Appellant Mohammad Rashid Salim, a citizen of Jordan, appeals the trial court's denial of his requests for habeas relief. We affirm.

## I. BACKGROUND FACTS

### A. Plea Bargain

Appellant pled guilty to two separately charged counts of aggravated assault with a deadly weapon in exchange for five years' deferred adjudication community supervision. A week later, his trial counsel (Trial Counsel) filed a "Motion for New Trial and Motion in Arrest of Judgment," seeking to withdraw Appellant's guilty pleas on the basis of incompetency due to drug use. That motion was denied by operation of law.

### B. First Application for Habeas Corpus

About seven months after the plea bargains, the State filed a motion to adjudicate Appellant's guilt in both cases, arguing that he violated his terms of community supervision by using drugs, twice refusing to submit to drug tests, and failing to complete an intensive day treatment program. Appellant was arrested pursuant to a warrant. In each case, Appellant's new counsel (Habeas Counsel One) filed an application for writ of habeas corpus on a Texas Code of Criminal Procedure Article 11.07 form (Application One), arguing that Appellant's guilty plea was not knowing or voluntary and that Trial Counsel rendered ineffective assistance of counsel. *See* Tex. Code Crim. Proc. Ann. art. 11.07.

2

The trial court treated Application One as an Article 11.072 application and denied relief in a written order in June 2018. *See id.* art. 11.072. The trial court also issued the following findings of fact and conclusions of law, adopting all but one of the State's proposed findings and conclusions:

## FINDINGS OF FACT

*General Facts*

1.  App[ell]ant pled guilty, pursuant to plea agreements, to two second degree felonies of aggravated assault with a deadly weapon, to-wit: a motor vehicle, on June 9, 2017. . . .

2.  In accordance with the plea agreements, the trial court placed App[ell]ant on deferred adjudication community supervision for a period of five years. . . .

3.  App[ell]ant did not appeal his placements on deferred adjudication. . . .

4.  App[ell]ant is currently on deferred adjudication. . . .

*Procedural Facts*

5.  App[ell]ant filed . . . [A]pplication [One] . . . pursuant to [A]rticle 11.072 of the Texas Code of Criminal Procedure on March 13, 2018. . . .

. . . .

*Involuntary Plea–Controlled Substances*

. . . .

12. On the day of the plea, App[ell]ant had an active warrant. . . .

13. On the day of the plea, App[ell]ant seemed scared and acted nervous. . . .

14. App[ell]ant was worried about going to jail. . . .

3

15. [Trial Counsel] advised App[ell]ant of his options, and he chose to accept the plea offer. . . .

16. App[ell]ant questioned [Trial Counsel] regarding whether he was going to jail. . . .

17. Although App[ell]ant was acting nervous, his questions to [Trial Counsel] were interactive and rational. . . .

18. App[ell]ant appeared to be rational but very nervous. . . .

19. [Trial Counsel] concluded that App[ell]ant's decision to plead was voluntary. . . .

20. At the time of the plea, [Trial Counsel] had no idea that App[ell]ant [could] be under the influence of drugs. . . .

21. App[ell]ant was not slurring, falling over, or showing any type of intoxicat[ed] behavior. . . .

22. [Trial Counsel] now concludes that App[ell]ant's nervousness and antsy behavior could have been the result of being on some form of methamphetamine. . . .

23. This Court has personal knowledge that [Trial Counsel] used to be a police officer.

24. This Court concludes that, based on her training and experience, [Trial Counsel] would have noticed at the time of the plea if App[ell]ant was under the influence of drugs to the point that his plea was not freely, voluntarily, or knowingly made.

25. [Trial Counsel] advised the court that App[ell]ant was competent. . . .

26. This Court interacted thoroughly with App[ell]ant during the plea proceeding. . . .

27. This Court would have noticed if App[ell]ant was under the influence of drugs to the point that his plea was not freely, voluntarily, or knowingly made.

28. This Court would not have accepted App[ell]ant's plea if it believed that the plea was not freely, voluntarily, or knowingly made.

29. Immediately after his plea, App[ell]ant tested positive for methamphetamine and morphine. . . .

30. Positive results for methamphetamine from a urinalysis "generally indicate use within 1–4 *days* but could be up to a *week* following heavy chronic use." . . .

31. "Positive morphine urine results generally indicate use within the last two to three days, or longer after prolonged use." . . .

32. A positive urinalysis result was only evidence that App[ell]ant had used methamphetamines and morphine within the last couple days.

33. App[ell]ant presents no evidence that he was incompetent at the time of his plea. . . .

34. [Trial Counsel]'s affidavit is credible and supported by the record.

35. There is evidence App[ell]ant was able to consult with his attorney and the trial court with a reasonable degree of rational understanding. . . .

36. There is evidence App[ell]ant had a rational as well as factual understanding of the proceedings against him. . . .

37. The evidence demonstrates that App[ell]ant was competent to plead guilty even though he tested positive for drugs.

38. App[ell]ant presents no evidence that he was not competent to plead guilty. . . .

39. There is no evidence to overcome the presumption that App[ell]ant's plea was regular.

40. There is evidence that App[ell]ant's plea was freely, voluntarily, and knowingly made.

*Involuntary Plea–Immigration Consequences*

41. App[ell]ant acknowledged by his signature that he was aware that he "may be deported, excluded from admission to the United States, or denied naturalization under federal law" as the result of his plea of guilty. . . .

42. App[ell]ant was advised by trial counsel *on the record* as follows:

> . . . I just wanted to make sure that wasn't being used under pressure to force you to take this plea *when there might be some immigration consequences.*
>
> . . .
>
> I also got your plea bargain down a little bit off the deferred, but like the Judge says, *a deferred can be taken as a conviction from the Feds.* Do you understand?
>
> . . .
>
> *If (the Feds) let you stay here*, a deferred is not a conviction. And for future purposes, we talked about non-disclosures, correct?

. . .

43. Thus, counsel advised App[ell]ant that he may be deported as a result of this plea. . . .

44. The trial court advised App[ell]ant that typically these pleas "would cause (his) deportation." . . .

45. App[ell]ant admits that his father was eligible to apply for asylum status but did not apply in time. . . .

46. App[ell]ant believed that special rules applied to him because he was eligible for asylum. . . .

47. At the time of App[ell]ant's plea, [he] was twenty years of age. . . .

48. App[ell]ant alleges that he "is *now at risk* of deportation because of his guilty plea." . . .

6

49.     App[ell]ant does not allege that he is being deported. . . .

## CONCLUSIONS OF LAW

. . . .

*Involuntary Plea–Controlled Substances*

. . . .

5.      App[ell]ant was properly admonished.

6.      A trial court may not accept a criminal defendant's guilty plea unless the defendant is legally competent to make such a plea. *See Godinez v. Moran*, 509 U.S. 389, 400, 113 S. Ct. 2680, 2687 . . . (1993).

        . . . .

11.     App[ell]ant has failed to prove that his drug usage caused him to not be competent to stand trial at the time of his plea.

12.     App[ell]ant has failed to prove that his drug usage caused his plea to not be freely, voluntarily, or knowingly made.

13.     App[ell]ant has failed to overcome the presumption that his plea was regular.

14.     App[ell]ant's plea was freely, voluntarily, and knowingly made.

15.     App[ell]ant's first ground for relief is **DENIED**.

*Involuntary Plea–Immigration Consequences*

16.     There is a presumption of regularity with respect to guilty pleas under Texas Code of Criminal Procedure [A]rt. 1.15. *Ex parte Wilson*, 716 S.W.2d 953, 956 (Tex. Crim. App. 1986).

17.     Before accepting a guilty plea, the court must admonish the defendant as to the consequences of his plea, including determining whether the plea is freely, voluntarily, and knowingly given. *See* Tex. Code Crim. Proc. art. 26.13.

18.     App[ell]ant was properly admonished.

19. When a defendant complains that his plea was not voluntary due to ineffective assistance of counsel, "'the voluntariness of the plea depends on (1) whether counsel's advice was within the range of competence demanded of attorneys in criminal cases and if not, (2) whether there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Ex parte Moody*, 991 S.W.2d 856, 857–58 (Tex. Crim. App. 1999) (citations omitted).

20. In 2010, the United States Supreme Court decided that immigration consequences are unique in nature and are no longer considered collateral consequences of a plea. *Padilla v. Kentucky*, 559 U.S. 356, 365, 130 S. Ct. 1473, 1481 . . . (2010).

21. A defendant must be advised of the immigration consequences of his plea. *Padilla* . . . , 559 U.S. [at] 374, 130 S. Ct. [at 1486] . . . .

22. "When the law is not succinct and straightforward . . . , a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges *may carry a risk of adverse immigration consequences.* But when the deportation consequence is truly clear, . . . the duty to give correct advice is equally clear." [*Id.* at] 369, 130 S. Ct. [at] 1484 . . . .

23. An unmarried, under twenty-one year-old child "of an alien who is granted asylum under this subsection may, *if not otherwise eligible for asylum under this section*, be granted the same status as the alien if accompanying, or following to join, such alien." 8 U.S.C.A. § 1158 (b)(3)(A) (emphasis added).

24. There is evidence that, at the time of his plea, App[ell]ant could have been granted asylum status even though he had these pleas for aggravated assault with a deadly weapon had his father timely applied. *See* 8 U.S.C.A. §§ 1158(b)(2)(A)(ii); 1158(b)(2)(B)(i); 1158(b)(3)(A).

25. The law regarding the effect of App[ell]ant's pleas of guilty to aggravated assault with a deadly weapon on [his] immigration status was not succinct and straightforward . . . .

26. Because the law was not succinct and straightforward, [Trial Counsel] was only required to advise App[ell]ant that he may be

deported as a result of his plea. *Padilla* . . . , 559 U.S. [at] 369, 130 S. Ct. [at] 1484 . . . .

27. Counsel's advice was within the range of competence demanded of attorneys in criminal cases.

28. App[ell]ant pled guilty knowing that pleas of guilty in these cases would typically result in deportation.

29. App[ell]ant has failed to prove that there is a reasonable probability that, but for the alleged misconduct, he would not have pleaded guilty and would have insisted on going to trial.

30. App[ell]ant has failed to prove that his plea was involuntary due to ineffective assistance of counsel. . . . *Moody*, 991 S.W.2d [at] 857–58 . . . .

31. App[ell]ant has failed to overcome the presumption that his pleas were regular.

32. App[ell]ant's plea was freely, voluntarily, and knowingly made.

33. App[ell]ant's second ground for relief is **DENIED**.

Habeas Counsel One allegedly never told Appellant that the trial court had signed an appealable order denying Application One and instead led him to believe that Application One would be sent to the Texas Court of Criminal Appeals for disposition as provided in Texas Code of Criminal Procedure Article 11.07. *See* Tex. Code Crim Proc. Ann. art. 11.07.

## C. Second Application for Habeas Corpus

In September 2018, Appellant hired Habeas Counsel Two. In each case, Habeas Counsel Two filed an application for a writ of habeas corpus under Texas Code of Criminal Procedure Article 11.08 (Application Two). *See id.* art. 11.08. After a hearing, the trial court denied relief on Application Two but did not sign a written

9

order.[1]  This court therefore dismissed Appellant's appeals from the denial of relief on Application Two in each case for want of jurisdiction.  *Ex parte Salim*, Nos. 02-19-00009-CR, 02-19-00010-CR, 2019 WL 490516, at *1 (Tex. App.—Fort Worth Feb. 7, 2019, no pet.) (per curiam) (mem. op., not designated for publication).

### D.  Third Application for Habeas Corpus

### 1.  Gist of Application Three and the State's Response

In February 2019, soon after that opinion was handed down, Habeas Counsel Two filed an application for writ of habeas corpus under Article 11.072 (Application Three) in both cases, claiming that Appellant's guilty pleas were not knowing or voluntary because he was under the influence of drugs at the guilty plea hearing and that his trial counsel provided ineffective assistance of counsel by not advising him that pleading guilty to an aggravated felony would result in his mandatory deportation. *See* Tex. Code Crim. Proc. Ann. art. 11.072.  The State responded that Application Three was barred under the subsequent-writ rule because the trial court had treated Application One as an Article 11.072 application.  *See id.* art. 11.072, § 9(a).  Habeas Counsel Two was apparently not aware of the Application One ruling before reading the State's response to Application Three; Application One had not been in the clerk's record of the offense.  Habeas Counsel Two later learned that Application One had

---

[1]The trial court reset Appellant's bonds, but when he posted them, he was transferred from county jail, where he had been since January 2018, to federal custody, where he remained when appellate briefs were filed.

been assigned a separate writ cause number and was therefore kept in a separate file. *See id.* art. 11.072, § 4(b) ("At the time the application is filed, the clerk of the court shall assign the case a file number ancillary to that of the judgment of conviction or order being challenged."). In Appellant's supplemental Application Three,[2] Habeas Counsel Two argued that Application Three was not barred by the subsequent-writ rule and that Appellant was denied due process—by being deprived of his constitutional right to appeal—when Habeas Counsel One failed to properly advise him of his right to appeal the trial court's June 27, 2018 order in each case denying relief on Application One.

### 2. Findings of Fact and Conclusions of Law

The magistrate judge adopted the following findings of fact and conclusions of law proposed by the State:

**FINDINGS OF FACT**

*General Facts*

. . . .

4.      On March 13, 2018, App[ell]ant filed [A]pplication [One] . . . .

5.      On June 27, 2018, the trial court denied [Application One] pursuant to article 11.072. . . .

---

[2]Although the supplemental Application Three is entitled "First Amended Application . . . ," it "incorporates all arguments and evidence previously submitted, and without waiving those arguments, submits additional grounds for relief as set out more fully below."

6. App[ell]ant did not appeal the trial court's denial of [Application One].

*Procedural Facts*

7. App[ell]ant is currently on community supervision for these cases. . . .

8. App[ell]ant has properly alleged confinement. . . .

. . . .

*Subsequent Applications*

13. App[ell]ant's [Application One was] denied on the merits. . . .

14. [Application Three was] filed after the final disposition[] of App[lication One] under this article. . . .

15. App[ell]ant's [A]pplication [Three] allege[s] his pleas were involuntary because (1) he was under the influence of drugs and (2) counsel failed to properly advise him of the immigration consequences of his plea. . . .

16. App[ell]ant's involuntary plea claims were raised and rejected in [Application One]. . . .

17. The factual bases for App[ell]ant's claims were available when he filed [Application One]. . . .

18. The legal bases for App[ell]ant's claims were available when he filed [Application One]. . . .

*Out of Time Appeal*

19. App[ell]ant presents no evidence from [his] first writ counsel[] regarding whether he advised App[ell]ant of the denial of [Application One]. . . .

20. App[ell]ant has established a convoluted procedural history in this case since he filed [Application One]. . . .

# CONCLUSIONS OF LAW

. . . .

*Subsequent Applications*

9.   "(a) If a subsequent application for writ of habeas corpus is filed after final disposition of an initial application under this article, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that the current claims and issues have not been and could not have been presented previously in an original application or in a previously considered application filed under this article because the factual or legal basis for the claim was unavailable on the date the Applicant filed the previous application." Tex. Code Crim. Proc. art. 11.072, §[ ]9(a).

10.  "(b) For purposes of Subsection (a), a legal basis of a claim is unavailable on or before a date described by that subsection if the legal basis was not recognized by and could not have been reasonably formulated from a final decision of the United States Supreme Court, a court of appeals of the United States, or a court of appellate jurisdiction of this state on or before that date." *Id.* art. 11.072, §[ ]9(b).

11.  App[ell]ant's [A]pplication[ Three] fail[s] to contain sufficient specific facts establishing that the legal bases for his claims were unavailable when he filed [Application One].

12.  "(c) For purposes of Subsection (a), a factual basis of a claim is unavailable on or before a date described by that subsection if the factual basis was not ascertainable through the exercise of reasonable diligence on or before that date." *Id.* art. 11.072, §[ ]9(c).

13.  App[ell]ant's [A]pplication[ Three] fail[s] to contain sufficient specific facts establishing that the factual bases for his claims were unavailable when he filed [Application One].

14.  App[ell]ant's [A]pplication[ Three] fail[s] to contain sufficient specific facts establishing the current claims and issues have not been and could not have been presented previously in his previous application.

15.    App[ell]ant has failed to overcome the subsequent writ bar.

. . . .

*Out of Time Appeal*

17.    An applicant cannot withdraw his [A]rticle 11.072 application for writ of habeas corpus after the State has filed its response. *See Ex parte Moore*, No. 02-05-00464-CR, 2007 WL 1952379, at *1 (Tex. App.—Fort Worth July 5, 2007, no pet.) (mem. op., not designated for publication).

18.    App[ell]ant's [Application One] was not withdrawn by subsequent court proceedings.

19.    The deprivation of the right to appeal the denial of an application for writ of habeas corpus under [A]rticle 11.072 of the Code of Criminal Procedure infringes on the Applicant's right to due process. *See Ex parte Parodi*, PD-1740-11, 2012 WL 669981, at *1 (Tex. Crim. App. 2012) (Cochran, J., concurring).

20.    App[ell]ant is entitled to an [out-of-time] appeal in the interest of justice.

21.    This Court **GRANTS** App[ell]ant an [out-of-time] appeal of [Application One]. *See, e.g.*, *Chacon v. State*, No. 02-16-00012-CR, 2016 WL 5443358, at *1 (Tex. App.—Fort Worth Sept. 29, 2016, pet. ref'd) [(mem. op. not designated for publication)] ("The trial court later granted Appellant an out-of-time appeal regarding" the denial of his first application for writ of habeas corpus.).

Thus, the magistrate judge granted partial relief on Application Three by granting Appellant an out-of-time appeal in each case of the denial of relief on Application One. The trial court ratified the magistrate judge's decision.

## II. DISCUSSION

Appellant argues in three points that the magistrate judge abused his discretion by finding that Application Three was barred as a subsequent writ; that the proper

14

remedy was not granting an out-of-time appeal of the denial of relief on Application One but considering Application Three on its merits; and alternatively, that the trial court abused its discretion by denying relief on Application One.[3]

## A. Standard of Review and Burden of Proof

An applicant seeking habeas relief under Article 11.072 bears the burden of proving his claim by a preponderance of the evidence. *State v. Guerrero*, 400 S.W.3d 576, 583 (Tex. Crim. App. 2013). Normally, we review the trial court's decision denying habeas relief for an abuse of discretion. *Ex parte Mello*, 355 S.W.3d 827, 832 (Tex. App.—Fort Worth 2011, pet. ref'd). We apply the *Guzman* standard to our review of the trial court's findings in an Article 11.072 appeal. *Guerrero*, 400 S.W.3d at 583 & n.18 (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). We defer almost completely to the trial court's "findings [of fact] . . . supported by the record, especially when those findings are based upon credibility and demeanor." *Id.* This deferential review applies even when, as here, the findings are based on written evidence rather than on live testimony. *Id.* However, we review de novo pure questions of law and application-of-law-to-fact questions that do not turn on credibility and demeanor. *Ex parte Beck*, 541 S.W.3d 846, 852 (Tex. Crim. App. 2017) (reviewing a postconviction Article 11.072 ruling); *Ex parte Duque*, 540 S.W.3d 136,

---

[3]To the extent Appellant complains of the magistrate judge's rulings, the record shows that the trial court ratified them. We will therefore address the issues in terms of the trial court's rulings.

15

148 (Tex. App.—Houston [1st Dist.] 2017) *pet. struck*, No. PD-1135-17, 2018 WL 344321, at *1 (Tex. Crim. App. Jan. 10, 2018) (per curiam order) (not designated for publication).

## B. Trial Court's Authority to Treat Application One as an Article 11.072 Application

In part of his first point, Appellant argues that the trial court had no authority to treat Application One, filed on an Article 11.07 form, as an Article 11.072 application and that since the trial court had no jurisdiction under Article 11.07, it had no jurisdiction regarding Application One other than to dismiss it for want of jurisdiction. No party disputes that the Texas Court of Criminal Appeals has exclusive jurisdiction to entertain Article 11.07 applications for writs of habeas corpus. *See* Tex. Code Crim. Proc. Ann. art. 11.07; *Board of Pardons & Paroles ex rel. Keene v. Court of Appeals for Eighth Dist.*, 910 S.W.2d 481, 483 (Tex. Crim. App. 1995) ("Article 11.07 provides the exclusive means to challenge a final felony conviction. Jurisdiction to grant post conviction habeas corpus relief on a final felony conviction rests exclusively with this Court."). However, the parties also do not dispute that Appellant had not been convicted at the time he filed Application One and that Habeas Counsel One used the wrong form. Thus, Article 11.07 was not (and still is not) applicable to Appellant's cases. *See Keene*, 910 S.W.2d at 483.

The record shows that the State and the trial court treated Application One like an Article 11.072 application, and Appellant did not complain about such treatment

16

until he filed Application Two, more than four months after the trial court denied relief on Application One. We conclude that the trial court permissibly treated Application One as an Article 11.072 application, following the procedures outlined therein, *see* Tex. Code Crim. Proc. Ann. art. 11.072, §§ 4–7, and that we have jurisdiction over the appeal of the trial court's denial of relief of Application One. *See, e.g.*, *Ex parte Holland*, No. 05-17-01422-CR, 2018 WL 3949545, at *4 (Tex. App.—Dallas Aug. 17, 2018, pet. ref'd) (mem. op., not designated for publication); *cf. Guerrero*, 400 S.W.3d at 584 (noting that while the trial court could have properly dismissed the misnamed "motion to vacate judgment" for lack of jurisdiction, the trial court, the parties, and the court of appeals instead treated the document as an Article 11.072 application, and it contained enough specific allegations that, if true, might entitle the applicant to relief, so the Texas Court of Criminal Appeals would also treat the document as an Article 11.072 application). We overrule this portion of Appellant's first point.

## C. Remedy of Out-of-Time Appeal

In Application Three, Appellant argued that he was denied due process—by being deprived of his constitutional right to appeal—when Habeas Counsel One failed to properly advise him of his right to appeal the trial court's order denying relief on Application One. Appellant sought the trial court's reconsideration of Application One "along with the supporting materials submitted." Instead, the trial court granted an out-of-time appeal of the order denying Application One. In Appellant's second

17

point, he contends that the trial court's granting him an out-of-time appeal of the order denying relief on Application One was the wrong remedy and that the trial court should have instead considered Application Three on the merits or reconsidered the claims raised in Application One. Relying exclusively on Judge Cochran's unpublished opinions concurring in the Texas Court of Criminal Appeals's refusal of petitions for discretionary review in similar cases, *Parodi*, 2012 WL 669981, at *1 (Cochran, J., concurring); *Ex parte Martinez*, No. PD-1801-10, 2011 WL 2582199, at *1–3 (Tex. Crim. App. June 29, 2011) (Cochran J., concurring) (not designated for publication), Appellant argues that the trial court should have granted reconsideration of Application One and then an out-of-time appeal only if the trial court denied relief on reconsideration.

Rule 77.3 of the Texas Rules of Appellate Procedure provides that unpublished opinions from the Texas Court of Criminal Appeals "have no precedential value and must not be cited as authority by counsel or by a court." Tex. R. App. P. 77.3. Further, the record shows that the trial court timely considered Application One and denied the requested relief. The only arguable gap in due process concerning Application One was the absence of an appeal of that denial, and the trial court's granting an out-of-time appeal of Application One in the interest of justice permissibly closed that gap. *See Ex parte McCarty*, No. 03-14-00575-CR, 2015 WL 2089091, at *3–4 (Tex. App.—Austin Apr. 29, 2015, no pet.) (mem. op., not designated for publication) (holding "that an out-of-time appeal is a permissible

remedy under Article 11.072" and citing intermediate appellate court cases holding similarly); *cf. Ex parte Riley*, 193 S.W.3d 900, 902 (Tex. Crim. App. 2006) (holding that when "a breakdown in the system" occurs, "due process requires that Applicant be permitted to exercise his statutory right to file a petition for review"); *Ex parte Axel*, 757 S.W.2d 369, 374 (1988) (holding Article 11.07 applicant received no "assistance of counsel in protecting and preserving his appellate rights," which violated "his due process rights"). We overrule Appellant's second point.

**D. Finding that Application Three Was A Barred Subsequent Writ**

In the remainder of his first point, Appellant complains of the trial court's finding that Application Three was barred as a subsequent writ. *See* Tex. Code Crim. Proc. Ann. art. 11.072, § 9. That finding, however, did not lead to a ruling. The only ruling the trial court made on Application Three was to grant an out-of-time appeal of the denial of relief on Application One, a ruling that we upheld above. That is, the trial court did not grant or deny the remaining claims of Application Three. *See id.* art. 11.072, § 6(a) ("[T]he trial court shall enter a written order granting or denying the relief sought in the application."); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) ("In our writ jurisprudence, a "denial" signifies that we addressed and rejected the merits of a particular claim."). The granting of the out-of-time appeal "return[ed Appellant] to the point at which he [could] give notice of appeal" from the trial court's order denying relief on Application One. *Mestas v. State*, 214 S.W.3d 1, 4 (Tex. Crim. App. 2007) (internal quotation marks omitted). His other claims raised

19

in Application Three became premature and subject to dismissal with the granting of the out-of-time appeal. *See Torres*, 943 S.W.2d at 472. We therefore decline to address the trial court's findings regarding the unresolved claims in Application Three. *Cf. Ex parte Yusafi*, No. 09-08-00301-CR, 2008 WL 6740798, at \*1 (Tex. App.—Beaumont Aug. 26, 2009, pet. ref'd) (mem. op., not designated for publication) ("Should a given finding . . . be immaterial to the issue or irrelevant to our disposition, we may decline to consider" it.) (citing *Ex parte Reed*, 271 S.W.3d 698, 728–29 (Tex. Crim. App. 2008)). We overrule the remainder of Appellant's first point.

### E.  No Ineffective Assistance of Counsel under *Padilla*

In his third point, Appellant complains of the trial court's denial of relief on Application One. Appellant contends that he received ineffective assistance of counsel based on Trial Counsel's alleged failure to advise him that a guilty plea to an aggravated felony is a deportable offense and, but for that failure, he would not have pled guilty but would have gone to trial. He therefore implicitly challenges the voluntariness of his plea based on ineffective assistance of Trial Counsel.[4] "A defendant who pleads guilty after having been properly admonished of his constitutional rights, who has knowingly and voluntarily waived those rights, and who has been admonished as required by our constitutions and [A]rt. 26.13, is presumed to

---

[4]Appellant does not challenge the trial court's findings or conclusions on Application One regarding the voluntariness of his guilty plea based on the presence of drugs in his system at the time of the plea proceeding.

20

have entered a voluntary and knowing plea." *Mitschke v. State*, 129 S.W.3d 130, 136 (Tex. Crim. App. 2004); *see also Ex parte Harvin*, 500 S.W.3d 418, 428 (Tex. Crim. App. 2016) (citing same).

The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel. *Ex parte Scott*, 541 S.W.3d 104, 114 (Tex. Crim. App. 2017); *see* U.S. Const. amend. VI. That guarantee extends to criminal defendants who plead guilty. *Ex parte Evans*, 537 S.W.3d 109, 111 (Tex. Crim. App. 2017) (citing *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985)). To establish ineffective assistance, an appellant must prove by a preponderance of the evidence both that his counsel's representation was deficient and that the deficiency prejudiced his case. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013); *Hernandez v. State*, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999). To demonstrate that he is entitled to habeas relief based on his claim that his guilty plea resulted from ineffective assistance of counsel, Appellant must show that (1) Trial Counsel's performance was deficient, in that it fell below an objective standard of reasonableness; and (2) "there is a reasonable probability that, but for [Trial C]ounsel's errors, he would not have ple[d] guilty and would have insisted on going to trial." *Torres*, 483 S.W.3d at 47 (quoting *Hill*, 474 U.S. at 59, 104 S. Ct. at 370). The record must affirmatively demonstrate that the claim has merit. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

In *Padilla v. Kentucky*, the United States Supreme Court described the duties of a criminal defense attorney in advising clients of immigration consequences:

> Immigration law can be complex, and it is a legal specialty of its own. Some members of the bar who represent clients facing criminal charges, in either state or federal court or both, may not be well versed in it. There will, therefore, undoubtedly be numerous situations in which the deportation consequences of a particular plea are unclear or uncertain. The duty of the private practitioner in such cases is more limited. When the law is not succinct and straightforward . . . , a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear.

559 U.S. at 369, 130 S. Ct. at 1483. In *Ex parte Aguilar*, the Texas Court of Criminal Appeals held that criminal defense counsel's duty to correctly advise a client applies even when the removal consequence is not immediate as long as the "conviction [would] *automatically* trigger[] a loss of status which, in turn, [would] render[] a defendant presumptively removable." 537 S.W.3d 122, 127 (Tex. Crim. App. 2017) (emphasis added).

The trial court found that

- Appellant's signature on the plea-bargain paperwork showed that he knew he could be deported as a result of his guilty plea;

- Trial Counsel advised him "that he may be deported as a result of" his guilty plea;

- The trial court told him that a guilty plea to aggravated assault with a deadly weapon would typically result in deportation;

- Appellant thought special rules applied to him because he was eligible for asylum through his father, who was then eligible;

22

- Appellant was twenty years old when he pled guilty;

- Appellant admitted [in Application One] that his father did not apply for asylum status in time;

- Appellant alleged in Application One that he was "*now at risk* of deportation because of his guilty plea," not that he was being deported.

The record also shows that Trial Counsel advised Appellant to consult an immigration attorney, but he did not. The trial court concluded that Appellant was properly admonished under the law; that evidence in the record when Appellant pled guilty indicates that he could have received asylum status despite his guilty pleas if his father had timely applied; that the law concerning the effects of his guilty pleas on his immigration status was therefore not clear; that Trial Counsel's duty regarding immigration consequences was therefore limited to advising Appellant that he may be deported as a result of his guilty pleas; that her "advice was within the range of competence demanded of attorneys in criminal cases"; that when Appellant pled guilty, he knew that guilty pleas to aggravated assault with a deadly weapon usually resulted in deportation; and that he failed to overcome the presumption that his pleas were voluntary, failed to prove that his guilty pleas were involuntary due to ineffective assistance of counsel, and failed to prove Trial Counsel rendered ineffective assistance under either *Strickland* prong.

Appellant argues that

[f]ederal law is crystal clear that [his] charges are deportable offenses. *See* 8 U.S.C. § 1227 (a)(2)(A)(iii)[.] Federal law dictates that "[*a*]*ny* alien who is convicted of an aggravated felony at *any* time after admission is

23

deportable." *Id.* (emphasis added). This provision does not carve out exceptions for non-citizens who have asylum or withholding of removal status. It says, clearly and succinctly that "any" alien convicted of an aggravated felony at "any" time is deportable. Accordingly, trial counsel had a duty to inform [Appellant] of the "presumptively mandatory" immigration consequences of his plea that would make him "subject to automatic deportation."

Appellant told Trial Counsel and the trial court that he is "here under asylum." However, Appellant does not address the asylum provision, Section 1158 of the United States Code, relied on by the trial court in denying relief. The text of Section 1158 appears to give the Attorney General discretion (1) to determine whether an alien "convicted by a final judgment of a particularly serious crime"—which "an aggravated felony" is—also "constitutes a danger to the community of the United States" and (2) to determine whether to terminate the asylum granted to such a person. 8 U.S.C.A. § 1158(b)(2)(A)(ii), (c)(2)(B); *see also id.* § 1101(a)(43)(F) (defining aggravated felony as "a crime of violence (as defined in Section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment [is] at least one year"); 18 U.S.C.A. § 16(a) (defining a "crime of violence" as "an offense that has as an element the use, attempted use, or threatened use of physical force against [another] person"). Thus, if Appellant did have the asylum status he purported to have when he pled guilty, or even if he had timely gained it after his guilty plea, Section 1158 appears to give the Attorney General discretion to determine whether Appellant "constituted a danger to the United States community" and to decide whether to terminate his status. We therefore cannot conclude that it was clear to

24

Trial Counsel or the trial court that Appellant's guilty plea would necessarily trigger a loss of status or make him "presumptively removable." *Aguilar*, 537 S.W.3d at 127; *see Padilla*, 559 U.S. at 369, 130 S. Ct. at 1483.

The record supports the trial court's conclusions that Appellant did not meet his burden to prove that Trial Counsel rendered ineffective assistance and did not defeat the presumption that his guilty plea in each case was voluntary. We overrule his third point.

## CONCLUSION

Having overruled Appellant's three points, we affirm in each case (1) the trial court's order on Application Three granting the out-of-time appeal of the denial of relief on Application One and (2) the order denying relief on Application One.

/s/ Mike Wallach
Mike Wallach
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: January 16, 2020